UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW MEXICO

In re:
JAMES ROBERT LANCASTER III and
NORA B. LANCASTER,
              Debtors.                       No. 7-09-12269-SL

               **FINDINGS OF FACT AND CONCLUSIONS
                      OF LAW ON US TRUSTEE'S
                      <u>MOTION TO DISMISS</u>**

    This matter came before the Court for final hearing on the United States Trustee's ("UST") Motion to Dismiss Debtors' Chapter 7 case for 1) abuse and 2) under a totality of the circumstances (doc 18).  Debtors filed a Response (doc 28).  The UST appeared through its Trial Attorney Alice Nystel Page. Debtors appeared through their attorney Kieran F. Ryan.  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A).  For the reasons set forth below, the Court finds that the Motion to Dismiss based on abuse is well taken and should be granted.  Consequently, the Court will enter an order giving the Debtors 21 days to convert the case to either Chapter 13 or 11.  If Debtors fail to convert by the deadline, the Court will enter an Order Dismissing Case. The Court need not address the arguments regarding dismissal under a totality of the circumstances.

**<u>THE STATUTE</u>**

    This case is governed by the version of 11 U.S.C. § 707(b)(1) and (2) that was in effect on the date the Debtors filed their Chapter 7 petition, May 27, 2009 (doc 1).  On that date, section 707(b)(1) and (2) provided, in relevant part:

**§ 707. Dismissal of a case or conversion to a case under chapter 11 or 13**.

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.  In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).
>
> (2)(A)(I) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
>> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
>> (II) $10,950.
>
> (ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent  Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 2 of 15

payments for debts.  In addition, the debtor's monthly
expenses shall include the debtor's reasonably
necessary expenses incurred to maintain the safety of
the debtor and the family of the debtor from family
violence as identified under section 309 of the Family
Violence Prevention and Services Act, or other
applicable Federal law.  The expenses included in the
debtor's monthly expenses described in the preceding
sentence shall be kept confidential by the court.  In
addition, if it is demonstrated that it is reasonable
and necessary, the debtor's monthly expenses may also
include an additional allowance for food and clothing
of up to 5 percent of the food and clothing categories
as specified by the National Standards issued by the
Internal Revenue Service.
     (II) In addition, the debtor's monthly expenses
may include, if applicable, the continuation of actual
expenses paid by the debtor that are reasonable and
necessary for care and support of an elderly,
chronically ill, or disabled household member or member
of the debtor's immediate family (including parents,
grandparents, siblings, children, and grandchildren of
the debtor, the dependents of the debtor, and the
spouse of the debtor in a joint case who is not a
dependent) and who is unable to pay for such reasonable
and necessary expenses.
     (III) In addition, for a debtor eligible for
chapter 13, the debtor's monthly expenses may include
the actual administrative expenses of administering a
chapter 13 plan for the district in which the debtor
resides, up to an amount of 10 percent of the projected
plan payments, as determined under schedules issued by
the Executive Office for United States Trustees.
     (IV) In addition, the debtor's monthly expenses
may include the actual expenses for each dependent
child less than 18 years of age, not to exceed $1,650
per year per child, to attend a private or public
elementary or secondary school if the debtor provides
documentation of such expenses and a detailed
explanation of why such expenses are reasonable and
necessary, and why such expenses are not already
accounted for in the National Standards, Local
Standards, or Other Necessary Expenses referred to in
subclause (I).
     (V) In addition, the debtor's monthly expenses may
include an allowance for housing and utilities, in
excess of the allowance specified by the Local
Standards for housing and utilities issued by the

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 3 of 15

Internal Revenue Service, based on the actual expenses
for home energy costs if the debtor provides
documentation of such actual expenses and demonstrates
that such actual expenses are reasonable and necessary.
(iii) The debtor's average monthly payments on account
of secured debts shall be calculated as the sum of--
    (I) the total of all amounts scheduled as
    contractually due to secured creditors in each
    month of the 60 months following the date of the
    petition; and
    (II) any additional payments to secured creditors
    necessary for the debtor, in filing a plan under
    chapter 13 of this title, to maintain possession
    of the debtor's primary residence, motor vehicle,
    or other property necessary for the support of the
    debtor and the debtor's dependents, that serves as
    collateral for secured debts;
    divided by 60.
(iv) The debtor's expenses for payment of all priority
claims (including priority child support and alimony
claims) shall be calculated as the total amount of
debts entitled to priority, divided by 60.
(B)(I)   In any proceeding brought under this subsection,
the presumption of abuse may only be rebutted by
demonstrating special circumstances, such as a serious
medical condition or a call or order to active duty in the
Armed Forces, to the extent such special circumstances that
justify additional expenses or adjustments of current
monthly income for which there is no reasonable alternative.
(ii)     In order to establish special circumstances, the
    debtor shall be required to itemize each additional
    expense or adjustment of income and to provide--
    (I) documentation for such expense or adjustment
    to income; and
    (II) a detailed explanation of the special
    circumstances that make such expenses or
    adjustment to income necessary and reasonable.
(iii) The debtor shall attest under oath to the accuracy of
any information provided to demonstrate that additional
expenses or adjustments to income are required.
(iv) The presumption of abuse may only be rebutted if the
additional expenses or adjustments to income referred to in
clause (I) cause the product of the debtor's current monthly
income reduced by the amounts determined under clauses (ii),
(iii), and (iv) of subparagraph (A) when multiplied by 60 to
be less than the lesser of--
    (I) 25 percent of the debtor's nonpriority
    unsecured claims, or $6,000, whichever is greater;

-4-

```
            or
        (II) $10,000.
    (C) As part of the schedule of current income and
    expenditures required under section 521, the debtor
    shall include a statement of the debtor's current
    monthly income, and the calculations that determine
    whether a presumption arises under subparagraph (A)(I),
    that show how each such amount is calculated.
```

(Footnotes omitted.)

**FINDINGS OF FACT**

The Court finds the following facts from admissions in the pleadings, the testimony of the witnesses, the exhibits presented at the final hearing, and judicial notice of the file to the extent allowed by the Federal Rules of Evidence.

1. Debtors filed this Chapter 7 proceeding in the Bankruptcy Court for the District of New Mexico on May 27, 2009. (Doc 1).

2. The petition indicated that the debts were primarily consumer debts. (Doc 1, p. 1)

3. Debtors' Schedules D, E, and F showed, respectively, $445,813 in secured claims, $0 in priority claims, and $199,232 in non-priority unsecured claims. (Doc 1, Summary of Schedules, p. 8).

4. Debtors' Schedule I showed gross monthly income of $8,514 and net monthly income of $5,955. (Doc 1, p. 26).

5. Debtors' Schedule J showed monthly expenditures of $7,248. (Doc 1, p. 28).

6. Debtors' Form 22A, Statement of Current Monthly Income and Means Test Calculation, stated that the presumption of abuse did

-5-

not arise. (Doc 1, p. 36). This is based on Debtors' calculation of Monthly disposable income under § 707(b)(2), Form 22A line 50, as $118.56. (Doc 1, p. 42). A sixty month plan would have paid only $7,140. See 11 U.S.C. § 707(b)(2)(A)(I).

7. Debtors' household size is three. (Doc 1, p. 38).

8. The New Mexico median income for a family of three was $53,018 at the time of the petition. (Id.)

9. Debtors' Form 22A showed current annual income of $125,984, which is substantially above the applicable New Mexico median for a family of three.

10. On July 6, 2009, the UST filed a statement on the docket that the presumption of abuse arose under section 707(b)(2). (Docket, 7/6/2009).

11. Debtors did not allege or testify to any special circumstances. Debtors did not itemize additional expenses or categories of expenses, document them, or provide a detailed explanation of the special circumstances they claim make the additional expenses or categories of expenses both necessary and reasonable.

12. Michelle Lombard, a Bankruptcy Analyst employed by the UST testified regarding the results of work she did to analyze and corroborate items on the Form 22A. Ms. Lombard has been employed by the UST for over 20 years, has testified many times in the past, and is very knowledgeable about personal finances as they

relate to bankruptcy issues (particularly the requirements and exceptions for section 707 "abuse" cases). She is completely credible and the Court has never observed her to be predisposed to characterize the numbers other than as calculated, either in favor of the UST or a debtor.

13. Ms. Lombard recalculated Debtors' current monthly income ("CMI") from source documents as $11,817. (Lombard testimony.) Debtors did not contradict this testimony so the Court finds that CMI was $11,817. The Form 22A showed CMI of $10,499. (Doc 1, p. 38). The difference is **+ $1,318[1]**.

14. Ms. Lombard recalculated Debtors' transportation ownership expense from source documents. She increased the expense for vehicle 2 from $161 (doc 1, p. 40) to $172. (Lombard testimony). The difference is **- $11**.

15. Ms. Lombard recalculated Debtors' tax deduction expense from source documents. She increased the tax expense from $2,047 (doc 1., p. 40) to $2,176. (Lombard testimony). The difference is **- $129.**

16. Debtors deducted $1,115 for mandatory payroll deductions on Form 22A line 26. (Doc 1, p. 40). In fact, these deductions

---

[1] The Court will use the convention that a "difference" is positive ("**+**") if the UST has shown that either the income as reported on Form 22A is increased <u>or</u> a deduction has decreased (which would increase CMI.) A "difference" is negative ("**-**") if the UST calculated or conceded that the proper expense on Form 22A should be increased.

-7-

were not mandatory; they were for voluntary 401k and IRA contributions. (Lombard testimony.)

17. Debtors deducted $230 for life insurance premiums for term life for themselves. (Doc 1, p. 40). The payroll stubs did not show this expense, so the UST in exhibit 15 reduced deductions by $230. Later, however, the UST received documentation and agreed to the deduction. To track Exhibit 15, the Court will deduct $230 here and include it back at the bottom. The difference is **+ $230.**

18. Debtors deducted $200 for telecommunications expense on Form 22A line 32. (Id.)

19. Debtors deducted $212 for disability insurance premiums. (Doc 1, p. 41). The UST had not verified this expense when it prepared Exhibit 15, so did not include this expense. Later, however, the UST received documentation and agreed to the deduction. To track Exhibit 15, the Court will deduct $212 here and include it back at the bottom. The difference is **+ $212.**

20. Debtors deducted $100 for dependent educational expense of Form 22A line 38. (Doc 1, p. 41).

21. Debtors deducted $250 for monthly payment of priority claims on Form 22A line 44. (Doc 1, p. 42).

22. Ms. Lombard recalculated Debtors' future payment requirements on secured debts from source documents. She increased the expense for vehicle 1 from $238 to $317. (Lombard

-8-

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 8 of 15

testimony). The difference is **- $79.**

23. Debtors' Form 22A did not take a possible deduction for Chapter 13 administrative expenses, currently 9.1% for the District of New Mexico. Ms. Lombard calculated this deduction to be $294 monthly. The difference is **- $294.**

24. Debtors own a late model car, a late model truck, and a motorcycle, all with a total value of about $58,000. (Doc 1, p. 12-13). The secured claims against the vehicles total about $52,500. (Doc 1, pp. 15-16). The monthly payments on these vehicles total about $1,250. (Doc 1, p. 28). Debtors stated an intention to reaffirm the three vehicle loans. (Doc 5, pp. 1-2).

25. The Debtors had approximately $63,500 in exempt retirement accounts on the petition date. (Doc 1, p. 12).

26. The UST has claimed that Mr. Lancaster is 43 years old. The Court does not find this evidence in the record. However, Debtors appeared to be in their 30s or 40s. Therefore, the Court will make a finding that they are relatively young persons.

27. The $199,232 in non-priority unsecured claims includes $45,300 owed on student loans. All of the others are described as "revolving accounts." In other words, the Debtors owe about $153,900 in credit card debt.

28. Debtors' Statement of Financial Affairs shows that Debtors' wages in 2007 were $230,120. (Doc 1, p. 30). Wages in 2008 were $176,347. (Id.)

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 9 of 15

29. Debtors deducted $200 for telecommunications expense on the Form 22A line 32. They did not provide the UST with details for this expense. (Lombard testimony).

30. After the filing of the petition, one Debtor changed jobs, the other continues to be employed, and the family income has increased substantially. (Lombard testimony.)

31. No finding herein is intended to preclude Debtors from adjusting any expense (notably, income taxes) to reflect current conditions if the Debtors choose to convert their case.

**CONCLUSIONS OF LAW**

1. The Court concludes that the Debtors' CMI is $11,817.

2. Debtors are not allowed a deduction for what Debtors claimed were mandatory payroll deductions of $1,115. Form 22A, line 26, states:

> **Other Necessary Expenses: involuntary deductions for employment.** Enter the total average monthly payroll deductions that are required for your employment, such as retirement contributions, union dues, and uniform costs. **Do not include discretionary amounts, such as voluntary 401(k) contributions.**

Instead, the $1,115 represents discretionary contributions to retirement plans. In Woody v. United States (In re Woody), the Court of Appeals for the Tenth Circuit discussed the necessity of voluntary retirement contributions in the context of student loan discharge:

> To be sure, we agree with the principle that saving for one's retirement is a laudable goal that should

-10-

generally be encouraged. However, we also agree with
the many other courts that have held that, in the
context of bankruptcy proceedings, retirement
contributions should not take precedence over repayment
of preexisting debts. "Voluntary contributions to
retirement plans ... are not reasonably necessary for a
debtor's maintenance or support and must be made from
disposable income.... [A]lthough investments may be
financially prudent, they certainly are not necessary
expenses for the support of the debtors or their
dependents. Investments of this nature are therefore
made with disposable income; disposable income is not
what is left after they are made." In re Anes, 195
F.3d 177, 180-81 (3d Cir. 1999); accord In re
Harshbarger, 66 F.3d 775, 778 (6th Cir. 1995) ("[I]t
would be unfair to the creditors to allow the Debtors
in the present case to commit part of their earnings to
the payment of their own retirement fund while at the
same time paying their creditors less than a 100%
dividend." (quotation omitted)); In re Perkins, 318
B.R. 300, 306-07 (Bankr. M.D. N.C. 2004) (holding that
"401(k) contributions generally are not regarded as
reasonably necessary for the support or maintenance of
a debtor and thus may be considered as available income
from which a debtor seeking a § 523(a)(8) undue
hardship discharge could use to repay an educational
loan" and collecting supporting cases).

Woody, 494 F.3d 939, 952 (10th Cir. 2007). Although Woody deals with student loan hardship discharge, the same reasoning should apply to section 707(b) analysis. Furthermore, Debtors are young, have good jobs, and already have $63,500 in retirement accounts. The Court does not find that continued funding at this time is necessary and reasonable. The difference is **+ $1,115.**

3.   Debtors claimed a telecommunications expense of $200. The Line 32 instructions state:

>  Enter the total average monthly amount that you
>  actually pay for telecommunication services other than
>  your basic home telephone and cell phone service --
>  such as pagers, call waiting, caller id, special long

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 11 of 15

>     distance or internet service -- to the extent necessary
>     for your health and welfare or that of your dependents.

Home telephone and cell phone service are already included in the IRS Local Standards. In re Cleaver, 426 B.R. 390, 396 n.1 (Bankr. D. N.M. 2010). Because the Debtors did not itemize the expense, the UST suggested that $100 would be a reasonable expense for internet. The Court agrees and will allow the expense in the amount of $100. The difference is **+ $100.**

4. Form 22A line 38 deals with educational expenses for dependent children. The instructions for that line states:

>     You must provide your case trustee with documentation
>     of your actual expenses, and you must explain why the
>     amount claimed is reasonable and necessary and not
>     already accounted for in the IRS Standards.

Debtors deducted $100 for dance lessons for their child. Debtors have not shown that this is a necessary expense not already accounted for in the IRS standards. The difference is **+ $100.**

5. Debtors' Form 22A line 44 takes a $250 deduction for payments on priority claims. Debtors' Schedule E lists no priority debts. (Fact 3, above). Debtors' Schedule J lists $250 per month for student loans. Student loans are not priority debts. 11 U.S.C. § 507. See also, e.g., In re Williams, 253 B.R. 220, 232 (Bankr. W.D. Tenn. 2000)("Unlike claims for child and spousal support, student loan claims do not enjoy a statutory priority for distribution.") Student loans are generally nondischargeable. But, dischargeability and priority are

-12-

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 12 of 15

independent, unrelated concepts. Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 236 (1st Cir. BAP 2001):

> [N]ondischargeability is not the same as priority. Priority gives a claim a better right to estate assets or plan payments- i.e., to the funds distributed through bankruptcy-than is enjoyed by other unsecured claims. Nondischargeability, on the other hand, confers no priority as to estate assets; it merely causes a debt to survive the discharge, such that its holder can continue to collect it despite the discharge. Certain nondischargeable debts also happen to be priority claims, but only because the same debts appear on two lists: thus, in Chapter 13, spousal and child support obligations appear both on the list of priority claims, at 11 U.S.C. § 507(a)(7), and on the list of debts excepted from discharge, at 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). But priority does not per se confer or entail nondischargeability; and nondischargeability does not per se confer or entail priority.

Therefore, the Court disallows the $250 deduction. The difference is **+ $250.**

6. The Debtors are individual debtors and their debts are primarily consumer debts. Section 707(b) applies.

**SUMMARY AND CONCLUSION**

1. Debtors computed their monthly disposable income as $119.

2. The Court makes the following adjustments:

| OPINION REFERENCE | ITEM | Form 22A LINE # | CHANGE AMOUNT | DISPOSABLE INCOME |
|---|---|---|---|---|
| Debtors' unadjusted disposable income figure | | | | $119 |
| Changes per Memorandum Opinion | | | | |
| Fact 13 | Monthly income | 18 | $1318 | |
| Fact 14 | Transportation | 24 | -11 | |

-13-

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 13 of 15

| OPINION REFERENCE | ITEM | Form 22A LINE # | CHANGE AMOUNT | DISPOSABLE INCOME |
|---|---|---|---|---|
| Fact 15 | Tax withholding | 25 | -129 | |
| Fact 17 | Life insurance | 27 | 230 | |
| Fact 19 | Disability | 34 | 212 | |
| Fact 22 | Secured debts | 42B | -79 | |
| Fact 23 | Ch 13 admin expenses | 45 | -294 | |
| Conclusion 2 | voluntary retirement | 26 | 1115 | |
| Conclusion 3 | telecomm | 32 | 100 | |
| Conclusion 4 | dance lessons | 38 | 100 | |
| Conclusion 5 | priority expenses | 44 | 250 | |
| Subtotal of adjustments | | | $2812 | 2812 |
| Adjusted disposable income (before insurance) | | | | 2931 |
| Insurance expense conceded by UST | | | | -392 |
| Final calculation of disposable income | | | | $2539 |

3. The final disposable income number times 60 is $152,340. The $152,340 is 76% of Debtors' total unsecured nonpriority debt. The Court therefore must presume abuse under 11 U.S.C. § 707(b)(2)(A)(I).

4. The Debtors did not meet their burden under § 707(b)(2)(B) to rebut the presumption of abuse.

5. The Court will enter an Order granting the UST's Motion but giving the Debtors 21 days from the date of the entry of the Order to convert the case to either Chapter 13 or 11. If Debtors fail to convert by the deadline, the Court will enter an Order

Dismissing Case.

                                   _____
                                   Honorable James S. Starzynski
                                   United States Bankruptcy Judge

Date Entered on Docket:   February 3, 2011

Copies to:

Kieran F Ryan
Ryan Law Office
PO Box 26
Las Cruces, NM 88004-0026

Alice Nystel Page
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Philip J. Montoya
Trustee
PO Box 159
Albuquerque, NM 87103

Case 09-12269-s7    Doc 53    Filed 02/03/11    Entered 02/03/11 16:43:42 Page 15 of 15